Short Form Order/Judgment

## NEW YORK SUPREME COURT - NASSAU COUNTY

Present: Honorable **DICCIA T. PINEDA-KIRWAN**
                            Justice

IAS PART 20

-----------------------------------------------------------x
M.F., as parent and guardian, individually,
and on behalf of her minor school-aged
children, and all other children similarly
situated,

              Petitioner(s)/Plaintiff(s),

  -against-

ANDREW M. CUOMO, GOVERNOR OF
NEW YORK, in his official capacity; ET AL,

             Respondent(s)/Defendant(s).
-----------------------------------------------------------x

Index No.: 607277/21

Seq. No. 1

The following numbered papers read on this application by order to show cause by petitioner/plaintiff for a temporary restraining order and preliminary injunction and to permit petitioner to file with initials to protect her identity and that of her children.

| PAPERS | NUMBERED |
|---|---|
| Order to Show Cause-Amended Petition-Exhibits............... | EF 1 - 15, 21 -22 |
| Answering Affidavits-Exhibits........................................... | EF 16 - 17, 19, 25 - 56 |
| Reply................................................................................... | EF 23 - 24, 57 |

        This matter was received on June 10, 2021, and on consent of the parties, was scheduled for a Microsoft Teams conference on June 11, 2021. During the conference, the parties agreed to have the Court render a determination on the papers, which were received on June 16, 2021, and marked submitted on June 17, 2021.

        Now, upon the foregoing cited papers, it is ordered that this *ex parte* application for an Order to Show Cause by plaintiff/petitioner in this hybrid complaint/petition for a temporary restraining order and preliminary injunction enjoining defendants/respondents from continuing to impose school required face masks on M.F.'s children and all other students similarly situated in New York State, and to permit petitioner to file with initials to protect her identity and that of her children, is determined as follows:

        Petitioner, the mother of four school-aged children enrolled at schools in respondent Locust Valley Central School District ("School District"), seeks an Order striking down school required mask mandates, and certain New York State Department of Health ("NYSDOH") Regulations on the basis that they are causing her school-aged children, and all children similarly situated, irreparable harm. She claims that there are both known, and unknown, health risks of mandating face masks for school children, and seeks

to strike the school mask mandate as arbitrary and capricious, as violating state and federal laws requiring informed consent, violating the Separation of Powers rule, violating the Executive Law and Executive Orders, and violating petitioner's rights of equal protection and due process of law to refuse the mask mandate.

The crux of petitioner's argument is that her children pose little to no health threat to themselves, or to others through transmission, according to data by the Centers of Disease Control and Prevention (CDC) and other medical data, and that petitioner is entitled to Judicial Notice of this "commonly known fact to public health officials" and to declaratory and injunctive relief. Petitioner claims that the Governor's interpretation of the CDC data is not rational, and that the mask mandate imposed on school children is equally irrational.

It is well-settled that in order to demonstrate entitlement to a temporary restraining order (TRO), petitioner must establish: (1) a likelihood of success on the merits, (2) irreparable injury, and (3) that the equities balance in his or her favor (see *Pantel v Workmen's Circle/Arbetter Ring Branch 281*, 289 AD2d 917, 918 [2001]).

### *Likelihood of Success on the Merits*

As to the first requirement for injunctive relief, likelihood of success on the merits, petitioner need not show a certainty of success, but must make a *prima facie* showing of a reasonable probability of success (see *Barbes Rest. Inc. v ASRR Suzer 218, LLC*, 140 AD3d 430, 431 [2016]). Whereas here, a party is seeking to alter the *status quo*, petitioner must make a "clear" or "substantial" showing of likelihood of success (see *Tom Doherty Assocs., Inc. v Saban Entertainment, Inc.*, 60 F3d 27, 33-34 [2d Cir1995]). Additionally, where the temporary relief is identical to the ultimate relief sought, a TRO should only be granted in extraordinary circumstances or urgent situations of grave necessity upon the clearest evidence (see *Shake Shack Fulton St. Brooklyn, LLC v Allied Prop. Grp., LLC*, 177 AD3d 924, 927 [2019]; *Russian Church of Our Lady of Kazan v Dunkel*, 34 AD2d 799, 801 [1970]).

Petitioner's first argument is that COVID-19 does not rise to the level of a deadly "epidemic" contemplated in the definition of "disaster" in Executive Law §20(2)(a), pursuant to which the Governor is exercising his COVID-19 emergency power in his numerous executive orders that mandate masks be worn in schools throughout the state. Petitioner maintains that the risk of a child dying from COVID-19, or transmitting it to others, according to the CDC, is "basically zero," and thus the State is running afoul of its police power in responding to a declared health emergency.

Official records contradict petitioner's position that COVID-19 does not rise to the level of a deadly epidemic. In this state alone, NYSDOH data as of June 14, 2021, reveals that 2,092,599 people have tested positive for COVID-19 and 42,882 have died from the virus (*see* COVID-19 Tracker, Fatalities by County, NYSDOH, https://covid19 tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatali ties?%3Aembed=yes&%3Atoolbar=no [last accessed June 16, 2021]).

Specifically as to children, the CDC has recognized that 203 COVID-19 deaths among children between ages 0-18 were reported to the National Center for Health Statistics as of January 27, 2021 (*see* Scientific Brief Transmission of SARS-CoV-2 in K-12 Schools, CDC, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs transmission_k_12_schools.html [updated March 19, 2021]). Even assuming *arguendo* that the Infant Fatality Rate ("IFR") for children between 0-17 years old is "basically zero," petitioner makes no mention of the impact on children who contract the virus and survive. The CDC has recognized that children can get severely ill as a result of contracting COVID-19, and may require hospitalization, intensive care, or a ventilator to help them breathe (*see* COVID-19 in Children and Teens, CDC, https://www.cdc.gov/coronavirus/2019-ncov/ daily-life-coping/children/symptoms.html [last updated March 1, 2021]).

Regarding the near "zero" chance of transmission, when looking at the subset of schools on Long Island, NYSDOH records show that between September 8, 2020, and June 15, 2021, 29,474 students between the ages of 5 and 17 and 8,882 teachers and staff tested positive for COVID-19 (*see* COVID-19 Report Card, Positive Tests by Region, NYSDOH, https://schoolcovidreportcard.health.ny.gov/#/summary ([last viewed June 15, 2021]). As this state has recognized, while schools can be made safe for children through proper precautions, "there is nothing inherently safe about the school environment" (*Aviles v Blasio*, 2021 WL 796033, at *3 [SD NY, Mar. 2, 2021, No. 20-CIV-9829 (PGG)]). Due to the nature of schools, where children spend significant periods of time in close contact with one another, viruses can quickly sweep through a classroom (*see F.F. v State*, 194 AD3d 80 [2021]). "Large outbreaks have occurred with apparent transmission in schools" (*Aviles* at *3, quoting Margaret A. Honein et al., Data and Policy to Guide Opening Schools Safely to Limit the Spread of SARS-CoV-2 Infection, J. Am. Med. Ass'n, [Jan. 26, 2021], https://tinyurl.com/y6529wvf).

Additionally, schools have closed down due to COVID-19 outbreaks because "[s]ignificant secondary transmission of SARS-CoV-2 infection can and does occur in school settings when prevention strategies are not implemented or are not followed" (*see* Scientific Brief Transmission of SARS-CoV-2 in K-12 Schools, CDC, https://www.cdc.gov/ coronavirus/2019-ncov/science/science-briefs/transmission_k_12_schools.html [updated March 19, 2021]). As explained in the affidavit by Johanne E. Morne, Director of the AIDS

Institute at NYSDOH, and Acting Deputy Director for the Office of Public Health, the fact that the rate of infection in schools is significantly lower than that of the public at large is not a reason to ease up on adherence to the guidance, but is instead evidence that the guidance is fulfilling its intended goal.

The American Academy of Pediatrics and the Children's Hospital Association issued a report that summarized publicly reported data from 49 states showing that as of February 18, 2021, more than 3.1 million child COVID-19 cases were reported in the United States, and that "children represent 13.1% . . . of all cases" (*Id*, quoting Children and COVID-19: State-Level Data Report, Am. Acad. of Pediatrics, https://tinyurl.com/22a4f4mh [last updated Feb. 18, 2021]). "Children account for approximately 1% to 3% of reported hospitalizations, and approximately 0.1% to 2.2% of children who become infected with the virus require hospitalization" (*Id*). While the reported death rate among children has fortunately been low, as illustrated above, this is just one piece of the equation, and the simple reliance on this figure does not account for other dangers, such as the health impact on children who survive the virus, and their transmission to others.

Petitioner also ignores that aside from keeping children safe, the mask mandate seeks to protect teachers and school staff who have not been spared. According to data compiled by the American Federation of Teachers, over 530 K-12 teachers died from the virus last year (*see* Meryl Kornfield, A Teacher died of covid-19. Asked to wear masks in his honor, school board members silently refused, Wash. Post [Jan. 24, 2021, 8:27 PM], https://tinyurl.com/y2w477yf).

Petitioner's speculative assertion that the mask mandate is not a reasonably necessary element of the disaster effort, is based upon her contention that the mandate imposes a stricter requirement on children, who are the subset of the population least vulnerable to the virus. However, neither the CDC nor any other known and accepted medical authority has generally exempted children from masking requirements during the pandemic. In fact, the CDC in its "Operational Strategy for K-12 Schools through Phased Prevention" updated as of May 15, 2021, recommends that "[a]ll schools should implement and layer prevention strategies and should prioritize universal and correct use of masks and physical distancing" (https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/operation-strategy.html).

Petitioner next argues that masks do not confer a benefit in curbing the transmission of COVID-19. In support, she relies on, among other things, an email from Anthony Fauci, M.D., dated February 5, 2020. This email, aside from being written prior to both the CDC's and his own change in position on the efficacy of wearing masks following further scientific insight into COVID-19 transmission, was also tailored to a

specific "low risk" location, the details of which are not provided. Although at the beginning of the pandemic public health officials were uncertain of the role masks played in counteracting the transmission of the virus, the current position of public health authorities such as the CDC, World Health Organization, and the National Academy of Sciences is unequivocally that they aid in preventing its spread.[1]

Specifically, the CDC has recognized that COVID-19 "is transmitted predominately by inhalation of respiratory droplets" and that the benefit of masks is a combination of reducing both the emission and inhalation of these droplets by the wearer especially in cases of individuals who are asymptomatic or presymptomatic who are "unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions." (Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, CDC, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html [updated May 7, 2021]). Contrary to petitioner's contention that wearing masks to prevent the spread of COVID-19 is akin to "throwing sand at a chain-link fence," the CDC recognizes that masks can reduce the transmission of even fine droplets and particles by up to 50-70% (*see Id*).

Petitioner dedicates the bulk of her pleadings, and intersperses in support of her various other arguments, the claim that face masks are experimental devices, and that as a corollary, the mask mandate requires students to submit to human experimentation without informed consent. This proposition is relied upon as the basis for her claims that the mask mandate is violative of federal law, the New York Constitution, and Education Law. A cursory inspection of the evidence supporting this claim, however, reveals that it is built upon a spurious foundation.

Petitioner contends that face masks are an unapproved product that was authorized for emergency use only under a series of Emergency Use Authorizations ("EUAs"), that require informed consent. In support, petitioner cites to an August 5, 2020, EUA by the Food and Drug Administration ("FDA"). A review of the EUA shows that it was issued in response to concerns regarding insufficient supply and availability of disposable, single-use surgical masks for use in healthcare settings by health care personnel. As the FDA explains, this EUA simply authorizes the "emergency use of surgical masks that meet certain performance requirements for use in healthcare settings by health care personnel as personal protective equipment" (Personal Protective Equipment EUAs, FDA, https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-us

---

[1] It is important to note that petitioner ignores the stance of public health authorities such as the CDC regarding the efficacy of masks in preventing the spread of the virus, while simultaneously asking this Court to take judicial notice of other CDC data that purportedly supports her position.

e-authorizations-medical-devices/personal-protective-equipment-euas [updated June 14, 2021]). It does not have any bearing on the public's use of masks outside of a surgical setting. Petitioner does not provide any other basis for her conclusion that masks are experimental and that mandating their usage is tantamount to human experimentation.[2]

Despite this lack of foundation, petitioner avers that the mask mandate violates the Nuremburg Code and likens its imposition to the human experimentation perpetrated by the Nazis during World War II. This position is at best a tortured argument that callously disregards the plight suffered by victims of some of the darkest moments of human history. Comparing a public health mandate which has been imposed to help curb the spread of a virus that the CDC attributes to causing the death of nearly 600,000 people to date in this country alone,[3] to inhumane experimentation, is an analogy too strained for this Court to lend credence.

Petitioner alleges that CDC data that shows transmission and mortality rates are low in school-aged children, should inevitably lead to the conclusion that the virus only poses a "hypothetical" harm to school children. However, this position ignores the CDC's continued guidance to recommend the use of masks in K-12 educational settings. The irony of petitioner's stance – that Governor Cuomo's executive orders are based upon an irrational interpretation of CDC data – while the CDC itself recommends mask mandates in schools, is not lost upon this Court.

Petitioner's contention that pursuant to New York State Education Law §§ 3204, 3205, and 3212, the mask requirement is preempted by federal law is misguided as these provisions do not create a right to in-person unmasked education during a once in a century global pandemic (see Viemeister v White, 179 NY 235, 239 [1904][local regulation prohibiting children not vaccinated for smallpox from attending public school upheld since right to attend public schools is "necessarily subject to some restrictions and limitations in the interest of the public health"]). While no one is disputing the importance of in-person classroom learning, there is no fundamental right, as petitioner insists, to full time in-person education without a mask mandate (see Aviles at *20 [recognizing that parents "have no constitutional right to provide their children with . . . education unfettered by reasonable government regulation"]).

---

[2] It is perplexing that petitioner advances that there are "safer" alternatives to "experimental" masks such as the use of Ivermectin and Hydroxychloroquine, which she admits have not been approved in this country to treat COVID-19.

[3] https://covid.cdc.gov/covid-data-tracker/#datatracker-home

Nor does the mask mandate violate petitioner's rights secured by the Due Process Clause of the United States Constitution, to be free from forced medical experimentation. As previously mentioned, petitioner fails to put forth any non-conclusory allegations that her children are subjects of medical experimentation because they are required to wear masks in school pursuant to NYSDOH and CDC guidance.

Furthermore, whereas here, the right allegedly infringed upon is not a fundamental right, governmental regulation need only be reasonably related to a legitimate state objective, a recognized "low threshold" (*Bryant v New York State Educ. Dep't*, 692 F3d 202, 218 [2d Cir 2012]). Mask mandates have been explicitly held not to violate substantive due process or implicate fundamental rights, or even constitute medical treatment as petitioner alleges (*see Megeso-William-Alan v Ige*, 2021 WL 1911884, 2021 US Dist LEXIS 91037 [District of Hawaii, May 12, 2021, No. 21-00011 (SOM-RT)]; *Forbes v Cty. of San Diego*, 2021 WL 843175,*8, 2021 US Dist LEXIS 41687,*19 [SD Cal, Mar 4, 2021, No. 20-cv-00998 (BAS-JLB)]["Plaintiff does not sufficiently allege that the Mask Rules implicate the type of unwanted medical treatment that falls under the Fourteenth Amendment's Due Process Clause."]).

The Governor's mask mandate, like those similarly imposed by other governors in this country, is reasonably related to a legitimate state objective, that of constraining the spread of COVID-19, which has been acknowledged as "unquestionably a compelling [governmental] interest" (*Agudath Israel of Am. v Cuomo*, 983 F3d 620, 633 [2d Cir 2020][citation, quotation marks, and alteration marks omitted]; *Id*). That the mask mandate at issue here is in compliance with CDC guidelines, further makes it "clearly reasonable" (*Megeso-William-Alan*, 2021 WL 1911884, *9, US Dist LEXIS 91037, *25-26; *see also Oakes v Collier Cty.*, 2021 US Dist LEXIS 15174,* 5-6, 2021 WL 268387, *3 [MD Fla Jan. 27, 2021, 2:20-cv-568 (FtM-38NPM)]["It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19"]).

Petitioner cites to authorities that according to her, show that masks do not prevent COVID-19 from spreading. This Court, like others that have grappled with the same argument, does not find this point persuasive (*see Id*). Even if petitioner's sources are reliable, petitioner can at best demonstrate that experts are currently debating the effectiveness of face masks, which does not render it irrational for respondents to follow the CDC, rather than petitioner's experts (*see Id; C.F. v New York City Dep't of Health & Mental Hygiene*, 191 AD3d 52 [2020]). In the midst of such a debate, it is sensible for respondents to err on the side of caution as if the CDC is right, then masks save lives, and if the CDC is mistaken, petitioner has not alleged that anyone has died from having to wear a mask (*see Id*). It cannot be found to be irrational for respondents "to adopt a potentially life-saving measure when there is no commensurate downside" (*Megeso-William-Alan*, 2021 WL 1911884, *10, US Dist LEXIS 91037, *27).

Petitioner's equal protection allegations pursuant to Article I, § 11 of the New York Constitution likewise fail because she does not allege how the mask mandate is treating similarly situated students differently (*see Walton v New York State Dep't of Corr. Servs.*, 13 NY3d 475, 493 [2009]). The complained of NYSDOH guidance does not create a distinction between students, but rather creates the same indoor mask requirements for all schools consistent with CDC guidelines.

Petitioner further fails to show that the NYSDOH guidance is arbitrary and capricious. The power to impose public health and safety measures in response to a pandemic are among the most fundamental police powers reserved to the states by the Tenth Amendment to the United States Constitution (*see Jacobson v Massachusetts*, 197 US 11, 25 [1905]). Respondents are entitled to a "high degree of judicial deference," and it is petitioner's "heavy burden" to demonstrate that respondents' actions are "unreasonable and unsupported by any evidence" (*Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 544 [2006], quoting *Consolation Nursing Home, Inc. v Comm'r of New York State Dep't of Health*, 85 NY2d 326, 331 [1995]). Furthermore, where as here, state officials "'undertake to act in areas fraught with medical and scientific uncertainties,'" their authority is "especially broad" (*South Bay Pentecostal Church v Newsom*, 140 S Ct 1613 [2020][Roberts, C.J., concurring][citations omitted]). It is not the court's role to "second-guess the Governor's approach or to 'take a piecemeal approach and scrutinize individual' aspects of a rule designed to protect public health or 'otherwise create an exception for particular' individuals impacted by it" (*Columbus Ale House, Inc. v Cuomo*, 495 F Supp3d 88, 93 [ED NY 2020], quoting *In re Rutledge*, 956 F3d 1018, 1029 [8th Cir 2020]). It is sufficient that the restrictions at issue have a real and substantial relation to public health (*see Id*).

Additionally, the evidence shows that the Executive Orders and guidelines have changed as the pandemic continues to evolve, and the Governor has adjusted COVID-19 restrictions commensurately. For instance, as recently as June 7, 2021, Governor Cuomo announced that school districts can choose to no longer require that their students wear masks outdoors. Contrary to petitioner's position, these restrictions remain in effect as a result of current CDC data and recommendations, and not in spite of them. Petitioner's interpretation of the data and extrapolated conclusions are not in line with the CDC's own recommendations and guidance. Petitioner has offered no explanation for why, if the data support her contention, the CDC has chosen to maintain its recommendations that schools continue to implement the mask mandate. Petitioner's mere speculation and conjecture is insufficient to challenge the state's undisputed interest to institute rules for maintaining public health and safety.

In the case at bar, it cannot be said that the State's exercise of its emergency police powers in response to a public health emergency, which is accorded great deference, has been arbitrary, capricious, or lacking a rational basis (*see Id* [denying preliminary injunction in a challenge to New York City's rule setting a midnight closure for bars and restaurants); *Bocelli Ristorante Inc. v Cuomo*, 70 Misc3d 772 [Sup Ct, Richmond County 2020][denying preliminary injunction in case challenging New York city rule restricting indoor restaurant capacity to 25%]). Based upon the foregoing, petitioner is unable to demonstrate a likelihood of success on the merits on her various claims.

*Irreparable Harm*

Nor has petitioner demonstrated that her children or those similarly situated will suffer irreparable harm absent the relief sought. In order to be entitled to injunctive relief, petitioner must demonstrate that the harm is immediate (*see Schmitt v City of New York*, 50 AD3d 1010, 1011 [2008]). The irreparable harm element is essential to obtaining injunctive relief and has been recognized as the single most important prerequisite (*see Donohue v Mangano*, 886 F Supp 2d 126, 150 [ED NY 2012]). Petitioner attempts to meet this burden by arguing that her children are being deprived of their right to school and summer camp, allegations which are both made and supported in conclusory fashion.

The strongest argument proffered involves petitioner's fifteen year old daughter, G.M.F., who experiences problematic nose bleeds, a condition that petitioner claims is exacerbated by the mask requirement. The only evidence presented in support, is an undated doctor's note that simply states that an unidentified patient has a history of nosebleeds and may require frequent appointments to manage them in the future. Contrary to petitioner's numerous assertions, there is no evidence that these nosebleeds are caused or in any way exacerbated by wearing a mask.

Respondents further submit the affidavit of Patrick DiClemente, Principal of the Locust Valley High School, where G.M.F. is a sophomore, who states that in December of 2020, petitioner made an exemption request on the basis that G.M.F. is unable to medically tolerate a face covering. The School District followed its standard Section 504 process to evaluate G.M.F. and determine her need for accommodations. The request, and any information provided, was reviewed by the School District's physician. The School District attempted to obtain relevant information regarding G.M.F.'s needs by requesting permission to speak with G.M.F.'s doctor, which petitioner refused.

Mr. DiClemente also states that the School District attempted to mitigate petitioner's concerns while also preserving a safe school environment by endeavoring to offer additional accommodations in the form of mask breaks, but in response, received a

letter from petitioner's attorney that G.M.F required an exemption.[4] Mr. DiClemente avers that when a Section 504 meeting was held, no evidence was presented that G.M.F. was unable to medically tolerate a face covering, and the exemption was denied. Petitioner was informed that the Section 504 Committee would reconvene if she acquired any evidence to support her request, but has declined to exercise this option.

As to her other children, petitioner alleges that her fourteen year old daughter has developed severe face rashes from face masks, her twelve year old daughter frequently cries that she cannot breathe while in school due to face coverings, and that her eleven year old son has a central auditory processing disorder that makes it difficult for him to interpret what is being said through a mask. Aside from her own conclusory assertions, no evidence is submitted to support any of these contentions.

Nor does petitioner allege the immediate nature of any potential harm as her children have admittedly been subjected to the mask mandate since September of 2020, and petitioner is only now, nine months later, seeking the instant relief (*see In re Acct. by Carl Stix*, 42 Misc3d 1236[A][Sur Ct 2014][delay in seeking injunctive relief is antithetical to irreparable harm]; *Cosmos Studios Corp. v 41 Bleecker St. Owners Corp.*, 178 AD2d 251, 252 [1991][denial of a preliminary injunction is a matter of court discretion, which is not abused where petitioner fails to move with dispatch to seek an injunction]). To the extent that petitioner claims that G.M.F. will be unable to attend summer camp due to the mask mandate, Dr. Kenneth Graham, the Superintendent of Schools for the School District, states in an affidavit that NYSDOH guidance does not require face coverings to be worn during summer camps and recreation programs and the School District will not otherwise impose this restriction.

***Balancing of the Equities***

As to the final element for injunctive relief, the balance of the equities, the court must "weigh the interests of the general public as well as the interests of the parties to the litigation" *Eastview Mall, LLC v Grace Holmes, Inc.*, 182 AD3d 1057, 1059 [2020], quoting *Destiny USA Holdings, LLC v Citigroup Glob. Markets Realty Corp.*, 69 AD3d 212, 223 [2009][internal quotation marks omitted]). It requires a determination that the harm petitioner will suffer without the injunction will be greater than the harm to respondents if the injunction is granted (*see Nassau Roofing & Sheet Metal Co. v Facilities Devp't Corp.*, 70 AD2d 1021 [1979]). Here, enjoining the actions of respondents, including that of a state elected official in matters that affect public safety, would constitute an irreparable harm

---

[4] The Court notes that petitioner does dispute any of these claims, nor does she even mention any alternative accommodations, let alone establish that they would be unsuitable to alleviate the alleged harm to her children.

(*see Maryland v King*, 567 US 1301, 1301 [2012]). The balance of the potential and unsubstantiated harm to petitioner's children against respondents' interest in battling a once in a century global pandemic weighs squarely in respondents' favor (*see Columbus Ale House, Inc.* at 94).

The public interest also weighs against petitioner's application. The Constitution strikes a delicate balance between individual liberty and the interests of the community as a whole. The spread of COVID-19 has created a public health emergency that is unprecedented in our nation's history. In the United States alone, over 33 million have contracted the disease, and tragically, more than 597,000 have already died as a result (*see* COVID Data Tracker, CDC, https://covid.cdc.gov/covid-data-tracker/#cases_casesper 100klast7days [last viewed June 17, 2021]). Distilled to their core, petitioner's arguments center around the claim that COVID-19 is not a public health emergency. Her unsupported personal beliefs, however, do not provide a legal basis for her claims.

As recognized by the United States Supreme Court in the seminal case *Jacobson v Massachusetts*, 197 US 11, 26-27 (1905), relied upon by both petitioners and respondents, "[t]here are manifold restraints to which every person is necessarily subject for the common good. . . . Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to [act without regard for] the injury that may be done to others. . . ." During this pandemic, it has been the unenviable duty of authorities such as the respondents here to maintain often unpopular restrictions for the "safety of the many, and not permit the interests of the many to be subordinated to the wishes or convenience of the few" (*Id* at 29). They must be permitted to continue in this endeavor.

Any request for relief not expressly granted herein is denied.

Accordingly, petitioner's application for an Order to Show Cause is denied in its entirety.

This constitutes the decision and judgment of the Court.

Date: June 21, 2021

_____
DICCIA T. PINEDA-KIRWAN, J.S.C.