UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
**PATRICK DONOHUE**, Individually and on Behalf of **S.J.D.**,
a Student with Disabilities; *et al.*

21-CV-08463

Plaintiffs,

-against-

**KATHLEEN HOCHUL**, in her official capacity as
Governor of New York, *et al.*

Defendants.

-------------------------------------------------------------------------------X

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>NEW YORK CITY DEFENDANTS' MOTION TO DISMISS</u>

Brain Injury Rights Group, Ltd.
*Attorneys for Plaintiffs*

_____/S/_____

By:   Patrick B. Donohue, Esq.
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…....………………………………………………….………i

PRELIMINARY STATEMENT…..………………………....……….………………….………….1

ARGUMENT…………………………………………………………………………………………...1

<u>Point I</u>
PLAINTIFFS COMPLAINT STATES A CAUSE OF ACTION and PLAINTIFFS
STANDING IS SQUARELY ROOTED IN FEDERAL LAW..…………………………2

   1.   Standing of Patrick Donohue, as Parent of S.J.D…………………………..7

   2.   Standing of Marie Farrell, as Parent of E.F………………………………....10

   3.   Plaintiffs have an "injury in fact" for each day the mask is worn
     in violation of their Constitutional rights……………………………………12

CONCLUSION…………………………………………………………………………..21

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...........................................................2

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990)................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...........................................................2

*Chase Grp. All. LLC v. City of New York Dep't of Fin.*,
   620 F.3d 146 (2d Cir. 2010)................................................................................................6

*City of Chicago v. Morales*,
   527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999)...........................................................7

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)...........................................................6

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986)................................................................................................3

*Davidson v. Flynn*,
   32 F.3d 27 (2d Cir. 1994)................................................................................................2

*Goss v. Lopez*,
   419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975)...........................................................13

*Grandon v. Merrill Lynch & Co.*,
   147 F.3d 184 (2d Cir. 1998)................................................................................................2

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)...........................................................3

*Madonna v. United States*,
   878 F.2d 62 (2d Cir. 1989)................................................................................................2

*Milliken v. Meyer*,
   311 U.S. 457, 61 S. Ct. 339, 85 L. Ed. 278 (1940)................................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)................................................................6, 12

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*,
  600 F.3d 1104 (9th Cir. 2010) ............................................................................15, 19

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*,
  268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) ....................................................8

*Prince v. Massachusetts*,
  321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944) ......................................................8

*Reno v. Flores*,
  507 U.S. 292, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993) ............................................8, 9

*Robinson v. Overseas Mil. Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994) ..........................................................................................3

*S.W. v. New York City Dep't of Educ.*,
  646 F. Supp. 2d 346 (S.D.N.Y. 2009) ........................................................................13

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
  467 U.S. 947, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984) .............................................7

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) ...............................................13

*Troxel v. Granville*,
  530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) ............................................8, 9

*United States v. Windsor*,
  570 U.S. 744, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) ...........................................3

*W. Virginia State Bd. of Educ. v. Barnette*,
  319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) ................................................13

*Washington v. Glucksberg*,
  521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) ...........................................8

*Watt v. Alaska*,
  451 U.S. 259, 101 S. Ct. 1673, 68 L. Ed. 2d 80 (1981) .............................................19

*Weinberg v. Vill. of Clayton, New York*,
  No. 517CV0021NAMATB, 2021 WL 1699943 (N.D.N.Y. Apr. 29, 2021) ............................6

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
  550 U.S. 516, 127 S. Ct. 1994, 167 L. Ed. 2d 904 (2007) .......................................9, 10

**Federal Statutes**

Article III of the Constitution .........................................................................................7

20 U.S.C. § 1400 ...................................................................................................1

20 U.S.C. § 1415(j)..............................................................................................20

**State Statutes**

N.Y. Pub. Health Law § 12-b (McKinney) ........................................................3, 7

N.Y. Pub. Health Law § 12-b(1) .............................................................................4

N.Y. Pub. Health Law § 12-b(2) .............................................................................4

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ................................................................1, 21

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2

**Federal Regulations**

34 C.F.R. § 300.17..................................................................................................14

34 C.F.R. § 300.513................................................................................................14

**State Regulations**

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1........................................................26

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(2) ..............................................26

## **PRELIMINARY STATEMENT**

Plaintiffs submit this Memorandum of Law in Opposition to the New York City Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Defendants seemingly misunderstand the nature of Plaintiffs' Complaint, to wit: that a "one-size-fits-all" mask mandate is unconstitutional and unlawful as applied to those students with and without disabilities, in public and private school, whether vaccinated or unvaccinated, whether in small classes or large.  The mask mandate is arbitrary and capricious, contains overly broad, vague, and undefined terms – such as "face covering" itself, fails to provide accommodations for students with medical conditions, violates the terms of the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973, and other federal law. New York City Defendants imposed their own mask mandate on the City's public schools in July 2021, and the mandate remains in effect.[1] Mayor Bill de Blasio announced in July 2021 that — "despite the CDC's latest guidance that vaccinated kids and teachers can go mask-free." *Id.*

Defendants assert, *inter alia*, that (1) the Court lacks subject matter jurisdiction insofar as Plaintiff Donohue Individually and on behalf of S.J.D. lacks standing; (2) the Plaintiffs must utilize the IDEA's administrative process by filing Due Process Complaints concerning the State-wide school masks mandate, and (3) Plaintiffs have failed to state a claim upon which relief may be granted against the City Defendants.  Defendants' arguments, when followed to their logical and legal end(s), actually support the Plaintiffs' claims as described herein.

---

[1] NYC to uphold school mask requirement despite new CDC guidance (nypost.com).

1

## ARGUMENT

### POINT I

**PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION and
PLAINTIFFS' STANDING IS SQUARELY ROOTED IN FEDERAL LAW**

When deciding a motion to dismiss under Fed. Civ. P. 12(b)(6), the Court is required to accept the facts alleged in the Complaint as true and to construe all reasonable inferences in the nonmoving party's favor. See, *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998); *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (citing *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989)).

A Complaint must "contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and quotations omitted). Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint must be dismissed. *Id.* at 678–79. ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

To survive a motion to dismiss, Plaintiffs' Complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Bell Atlantic Corp.*, 550 U.S. at 570. A claim is facially plausible when the Plaintiffs plead factual content that allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. *Bell Atlantic Corp.*, 550 U.S. at 556.

2

To secure standing, "[f]irst the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural or hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and . . . the result of the independent action of some third party not before the court.' Third, it must be 'likely' as opposed to merely 'speculative' that the injury would be 'redressed by a favorable decision.'" *United States v. Windsor*, 570 U.S. 744, 757, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

While the burden of proving jurisdiction is on the party asserting it,[2] where the district court relies solely on the pleadings and supporting affidavits, Plaintiff need only make a *prima facie* showing of jurisdiction. *Id.*

In the case at bar, Plaintiffs Complaint makes a *prima facie* showing of jurisdiction. The City Defendants' attempt to argue that Plaintiffs lack standing is untenable at best. Not only do Plaintiffs have standing, as demonstrated herein, but during oral argument before this Court on November 18, 2021, Counsel for the City represented that although the New York City Department of Education ("NYC DOE") is the agency tasked with enforcing the State mask mandate, the agency has not "opted" to enforce same.

This fact remains important, as Defendants conveniently neglect to address that under N.Y. Pub. Health Law § 12-b (McKinney):

---

[2] *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986).

"(1) A person who willfully violates or refuses or omits to comply with any lawful order or regulation prescribed by any local board of health or local health officer, is **guilty of a misdemeanor**; . . .

(2) Any person who willfully violates any provision of this chapter, or any regulation lawfully made or established by any public officer or board under authority of this chapter, the punishment for violating which is not otherwise prescribed by this chapter or any other law, **is punishable by imprisonment not exceeding one year, or by a fine not exceeding ten thousand dollars [$10,000] or by both.**"

The violation provisions of §2.60, the State-wide school mask mandate in question, enacted on

August 27, 2021, sets forth:

(f) Penalties and Enforcement

(i) Any violation of any provision of this Section is subject to all civil and criminal penalties as provided for by law. Individuals or entities that violate this **Section are subject to a maximum fine of $1,000 for each violation**. For purposes of civil penalties, **each day that an entity operates in a manner inconsistent with the Section shall constitute a separate violation under this Section**.

The preceding exposes yet another element of the mask mandates that exemplify their overly broad capricious nature. Depending on which section the enforcement agency chooses, Plaintiffs would be subject to either a misdemeanor (N.Y. Pub. Health Law § 12-b(1)), imprisonment up to one year (N.Y. Pub. Health Law § 12-b(2)), a fine of $1,000 (§2.60(f)(i)) or a fine up to ten times that amount at $10,000 (N.Y. Pub. Health Law § 12-b(2)). The terms of the mask mandate (§2.60) do not offer clear guidance to those agencies enforcing the same.

As outlined in Plaintiffs' Complaint, "face covering" is an undefined, amorphous term that changes, has changed, and will change, from year to year, month to month, and week to week, as well as from place to place, throughout the course of the pandemic. During Governor Cuomo's tenure in the early phase(s) of the pandemic, there was a dearth of Personal Protective Equipment (PPE) and other protective devices such as surgical masks. As a result, Governor Cuomo encouraged the public to make their own masks from household materials during press conferences

4

and/or in press releases. Homemade masks were made of bandanas, paper towels, quilts, socks, t-shirts, sheets, clear vinyl, foam, vacuum cleaner bags, pillowcases, dish towels, and other materials.

Since assuming the role of Governor, Defendant Hochul has not clarified or defined the term "face covering" or "face mask" – yet she mandates "their" use in public and private schools from kindergarten through high school, subjecting those will not comply, cannot comply or do not comply to substantial penalties and fines. The mask mandates do not provide any pre or post-deprivation remedies to the Plaintiffs.

Students, including special education Students like S.J.D., in private school, who do not wear a mask because they are unable to do so, who are fully vaccinated against the Corona Virus, who socially distance by virtue of their confinement to a wheelchair, remain subject to the penalties for violating the mask mandates and thus have standing to challenge them. The mere fact that NYC DOE may not enforce the NY State mandate in or at private schools in New York City does not mean that NY State or local health officials cannot, or will not, enforce the mask mandates.

As reflected herein, and conceded at oral argument, Students who cannot or do not wear a mask to NYC public schools, for whatever reason, are sent home – there is no remote or home learning available for those who cannot mask. Students who cannot wear a mask to school, or while in school, for whatever reason, are sent home, and in extreme cases, suspended – for up to five (5) days – because they cannot wear a mask. Students are deprived of their right to an education under IDEA and the New York State Constitution without due process. Students and others visiting the NYC Public Schools are subject to summary fines without due process. Students, like E.F., are denied reasonable accommodations for medical conditions in violation of

the IDEA and Section 504 of the Rehabilitation Act of 1973 – they are denied medical exemptions to the mask mandate without due process, without pre and/or post-deprivation remedies.

An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 656, 94 L. Ed. 865 (1950). The Supreme Court has described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." 470 U.S. at 542.

"An essential principle of due process is that a deprivation of ... property be preceded by notice and opportunity for hearing appropriate to the nature of the case," and that the notice "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Weinberg v. Vill. of Clayton, New York*, No. 517CV0021NAMATB, 2021 WL 1699943, at *10 (N.D.N.Y. Apr. 29, 2021)(Court found the very limited pre-deprivation process afforded to Plaintiffs posed a high risk of erroneous deprivation); *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotations marks omitted).

It is disingenuous to suggest that Defendants have been absolved of liability—by Defendants' own admission at oral argument, the NYC Defendants have not "opted" to enforce the State-wide mask mandate upon the belief that it was inappropriate and that students needed "mask breaks," which are provided for by the mandate in question. However, given that the State Defendants indicated at oral argument that the school mask mandate would be renewed, and in fact has been renewed, City Defendants may choose, or be required, to enforce the

renewed/reissued mandate – if not by the State Defendants themselves by way of any one of their agencies.

### 1. *Standing of Patrick Donohue, as Parent of S.J.D.*

The City Defendants correctly assert that Mr. Donohue has not masked his daughter, S.J.D., since her return to in-person learning in May 2021. However, as outlined in §2.60, **_each day_** S.J.D. does not and has not worn a mask constitutes a violation, which City Defendants are entitled, authorized, and expected to enforce, and which the State Defendants may enforce as well. Plaintiffs Donohue and S.J.D. remain at risk from devasting and crushing fines/penalties for non-compliance with the mask mandates – a risk that has only increased with the admission that S.J.D. does not wear a mask daily because of her medical condition because she cannot medically tolerate said mask.[3]

Plaintiff Donohue has standing not only as a Parent of a student with disabilities as described herein but as an individual subject to the penalties outlined in §2.60 and §12-b of the Public Health Law for failure to adhere to the terms of the school mask mandate. "When asserting a facial challenge to an ordinance, a party seeks to vindicate not only his own rights, but those of others who may be adversely impacted by the statute in question. In this sense, the threshold for facial challenges is a species of third party (*jus tertii*) standing, which the Court has recognized as a prudential doctrine and not one mandated by Article III of the Constitution." *City of Chicago v. Morales*, 527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society . . . ." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984).

---

[3] While the NYC Defendants allege that Students can make requests for medical exemptions from the mask mandates to the DOE, there is no such mechanism for Students attending private schools.

Plaintiff Patrick Donohue also has standing as S.J.D.'s Parent. The liberty interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). In *Troxel*, the Supreme Court reiterated, "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." 530 U.S. at 65–66, citing *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L. Ed. 645 (1944).

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." *Troxel*, 530 U.S. at 65. The Fourteenth Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." *Id.*; *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).  The Fourteenth Amendment's Due Process Clause includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." 530 U.S. at 65, citing *Washington*, 521 U.S. at 720; see also *Reno v. Flores*, 507 U.S. 292, 301–302, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). As set forth above, a parents' liberty interest in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. 530 U.S. at 65.

Children are not mere creatures of the State; those who nurture them and direct their destiny have the right, coupled with the high duty, to recognize and prepare them for additional obligations. *Id.*, citing *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534– 535, 45 S. Ct. 571, 69 L. Ed. 1070 (1925).  As long as a parent adequately cares for their children (*i.e.,* is fit), there will be no reason for the State to inject itself into the private realm of the family and further question the ability of that Parent to make the best decisions concerning the rearing of

that Parent's children," *Id.* at 68–69, citing *Reno v. Flores*, 507 U.S. 292, 304, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993), which includes wearing a mask for the duration of the school day.

In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t] . . . to direct the education and upbringing of one's children" (citing *Meyer* and *Pierce*)). *Troxel*, 530 U.S. at 66.

In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Id.* Each Parent/Plaintiff's liberty interest in the care, custody and control of their children has been, and is, implicated by the "one-size fits all" universal mask mandates at issue in the case at bar – mask mandates that DO NOT establish or identify any process or procedure for disabled students, or any student for that matter, to apply for and receive an accommodation or medical exemption to the mandates.  The mask mandates at issue DO NOT provide an adequate means or opportunity to be heard, there are no impartial hearings as there are under the IDEA or Section 504, and the mask mandates at issue DO NOT establish a means to appeal or challenge a denial of a requested accommodation or medical exemption.

Additionally, as a Parent of a student with disabilities, Mr. Donohue has independent and individual rights under the IDEA, which establish and provide for standing as a matter of law in actions where IDEA is implicated. In *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, the Supreme Court held that "[w]ithout question[,] a parent of a child with a disability has a particular interest in fulfilling 'our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." *Winkelman ex*

*rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 529, 127 S. Ct. 1994, 167 L. Ed. 2d 904 (2007). *Winkelman* expressly empowers Parents, as the primary stakeholder in their children's education, to bring challenges and request hearings on a broad range of issues, including matters of identification, evaluation, educational placement, or the provision of a free appropriate public education. *Id.* at 531. This includes the administrative process, as well as challenges and claims in federal and state courts, brought in jurisdictions with authority to hear and adjudicate same. *Id.*

As a logical and legal conclusion, Plaintiff Donohue has standing not only as a matter of *jus tertii*, as Parent of S.J.D., a disabled student in the State of New York, protected by the Americans with Disabilities Act (ADA), the IDEA, and the Rehabilitation Act of 1973 ("Rehab Act"), but has standing individually.

If the State and City have imposed mask mandates in our schools "to protect" as Commissioner Zucker has said, "our" children, the mandates run afoul of the principles outlined in *Troxel.* Parents, each Parent, especially those of special education Students, know how to protect their children best. If the mask mandates have been imposed by the State and the City to protect others from each Parent's child, they are improper as others can best protect themselves by getting vaccinated, wearing masks voluntarily, socially distancing, and whatever other measures they choose to protect themselves, including remote learning or learning from home.

Although the Court may ultimately find that Defendants (State and City alike) did not deprive or otherwise unlawfully interfere with the Plaintiffs', each Parent Plaintiff's, liberty interest in the care, custody, and control of their child/children, including the Parent/Plaintiffs' right to direct the upbringing and education of children under their control, the Plaintiffs' Complaint properly states a cause of action, and the Plaintiffs have proper standing to maintain the action.

10

2. ***Standing of Marie Farrell, as Parent of E.F.***

As discussed at the oral arguments before the Court on November 18, 2021, E.F. is a student with disabilities that has been denied an accommodation for the school mask mandates. Not only did the Local Education Agency (LEA) NYC DOE and the David Marquis School of the Arts deny E.F. the due process protections, pre- and post-deprivation, afforded to her by federal law, it issued an arbitrary and capricious decision denying E.F. an accommodation.

Perhaps even more problematic and troubling, Plaintiffs discovered that at the hearing before this Court on November 18, 2021, Defendants neglected to mention that it was Principal Regan, agent of the NYC DOE, and *not* the Office of School Health, as represented to the Court, who denied E.F. an accommodation/medical exemption for the mandatory mask policy. Upon further investigation into the denial of E.F.'s accommodation, Plaintiffs learned that E.F.'s school, P37 The David Marquis School of the Arts, has a large board posted at the school's entrance displaying the school's masking policy that reads:

> "Please make sure <u>all</u> students are wearing a face covering at <u>all</u> times. Students can get a short mask break when outside for APE/outdoor learning activities.[4]" (emphasis added).

A photo of the board displaying the City Defendants' masking policy displayed in the school's lobby is annexed hereto as **Exhibit 1.** The posted policy seemingly contradicts Counsel's representations at oral argument that NYC DOE allows for frequent "mask breaks" and other accommodations throughout the school day.

City Defendants also neglected to address the flagrant Due Process violations that accompanied the denial of E.F.'s request for an accommodation, and upon information and belief,

---

[4] "APE" is understood to mean Adaptive Physical Education.

to those other students so similarly situated who were denied an accommodation for mask-wearing. The written denial of Plaintiff's request for an accommodation failed to advise the Parent/Plaintiff how, if at all, she could appeal said denial, to whom the appeal should be made, and the timeframe in which to do so. Plaintiff's request for an accommodation was denied by an agency/school within the NYC DOE. Yet, neither the City nor the State Defendants have promulgated any formal policy or procedure for addressing accommodation requests – the mask mandates are clearly arbitrary and capricious as outlined in Plaintiffs' Complaint.

If there were an articulable process for requesting an accommodation or medical exemption from the mask mandates, Defendants – both NYC DOE and the State Defendants – would be required to inform Parents and Students of their Due Process rights. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950); citing *Milliken v. Meyer*, 311 U.S. 457, 61 S. Ct. 339, 85 L. Ed. 278 (1940). Principal Regan's letter exemplifies the lack of any process, let alone due process – as well as the lack of pre and post-deprivation remedies – associated with mask mandates. Neither the City nor the State Defendants provide Parents or Students with adequate Due Process, pre and post-deprivation remedies, relative to requests for accommodations or medical exemptions from their mask mandates.

As the parents of their children, Plaintiffs Marie Farrell and Angela Nolan have sufficient standing for the same reasons set forth above relative to Mr. Donohue's standing under the IDEA and the principles outlined in *Troxel.*

3. **Plaintiffs have an "injury in fact" for each day the mask is worn in violation of their Constitutional rights.**

Defendants make the incredulous argument that in order for judicial relief to be obtained properly, a Student must be ***injured*** in the literal sense. Defendants seemingly take the position that a Student must wear a mask until the Student experiences a medical emergency (presumably related to respiratory distress), that the Student must _survive_, and THEN the Student would be an "injured" party entitled to recover via judicial relief *vis a vis* an accommodation.

It is well-established that "[t]he denial of…a procedural right created by the IDEA … constitutes an injury, in fact, sufficient to satisfy the standing requirement." *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009); *see also Cruz v. New York City Dep't of Educ.*, 18-CV-121440 (PGG), Docket Entry No. 14, at 9-11 (SDNY January 9, 2019). A Plaintiff need not suffer an injury in the "personal injury" sense. Defendants' "actual injury" as a physical injury argument is not only preposterous and shocking but fails to recognize the Constitutional rights afforded to students, especially those students protected by the IDEA and Section 504, and that a violation of those rights is an injury sufficient to grant standing.

Defendants ignore well-established precedent that provides "young people do not 'shed their constitutional rights' at the schoolhouse door. The Fourteenth Amendment, as now applied to the States, protects the citizens against the State itself and all of its creatures—Boards of Education not excepted." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) and *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943). "Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process

Clause and which may not be taken away . . . without adherence to the minimum procedures required by that Clause." *Id.*

City Defendants' argument that Plaintiffs are required to address the issue of masking through an "administrative process" supports Plaintiffs' claims and allegations in the Complaint. The IDEA establishes the administrative process that Defendants refer to. Defendants' argument that Plaintiffs are required to address the issue of masking through the IDEA's administrative process is tantamount to a concession that masking, and an accommodation/exemption thereto, is properly addressed by/in a Student's IEP or by request for a 504 accommodation. And while Defendants seek dismissal of Plaintiffs' Complaint by arguing that Plaintiffs are required to challenge the masking mandates through the administrative process, Defendants have neither established such a process nor provided guidance/notice to Parents or Students concerning such a process.

Following Defendants' logic, if mask mandate exemptions and/or accommodations must be adjudicated by DOE's Impartial Hearing Office, it must be within the purview of the Impartial Hearing Officers ("IHOs") to adjudicate the same. IHOs derive their authority to conduct administrative hearings from the IDEA and according to 34 C.F.R. § 300.513. Consistent with Defendants' argument, a mask ***must*** be related to the provision of a Free Appropriate Public Education ("FAPE") defined by 34 C.F.R. § 300.17 – as Congress established the IDEA to ensure that States' receiving federal funds provide Students with a qualifying disability a FAPE. As outlined in 34 C.F.R. § 300.17, a "[f]ree appropriate public education or FAPE means special education and related services that:

    (a)  Are provided at public expense, under public supervision and direction, without charge;

    (b)  Meet the standards of the SEA, including the requirements of this part;

    (c)  Include an appropriate preschool, elementary school, or secondary school education in the State involved; and

    (d)  Are provided in conformity with an individualized education program (IEP)
           that meets the requirements of §§300.320 through 300.324.

Defendants must concede that subsection (d) is the controlling authority for the IHO's jurisdiction. Following Defendants' argument to its logical end, if IHOs were to adjudicate requests for accommodations/medical exemptions to the mask mandates, they would need to address at least three issues: (1) whether the implementation of the mask mandates, including the State-wide school mask mandate, constituted a "change in educational placement" as defined by the IDEA that violates the IDEA's stay-put provision; (2) whether the mask is a "medical device" for purposes of creating and/or amending the Student's IEP; and (3) if the mask is not a "medical device," is the mask a "restraint" – also to be included in the Student's IEP?

Guidance concerning question (1) can be found in *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010). Based on Supreme Court case law, Congress's express intent in the IDEA, the agency's implementing regulations, and sister circuits' decisions, "educational placement" means the general educational program of the Student. *Id.* More specifically, as the Ninth Circuit concluded, under the IDEA, a change in educational placement relates to whether the Student is moved from one type of program—i.e., regular class— to another type—i.e., home instruction. *Id.* A change in the educational placement can also result when there is a significant change in the Student's program even if the Student remains in the same setting. *Id.*

When Congress enacted the IDEA, it did not intend for the IDEA to apply to system-wide administrative decisions. *Id.* More specifically, the IDEA's stay-put provision was not intended to apply to system-wide changes in public schools that **affect** disabled and non-disabled children

alike. *Id.* Thus, system-wide changes in public schools that **affect** disabled and non-disabled children alike are not changes in educational placement.[5] *Id.*

In the case at bar, Plaintiff E.F.'s doctor notes in his letter to the DOE " . . . due to her intellectual disability, she would lack the understanding for the need, or requirement for a mask" demonstrates that wearing a mask **affects** E.F., a disabled student, differently than it would affect non-disabled Student wearing the same mask – as the non-disabled Student would be able to understand the need and/or requirement for a mask.

A "change in program" is defined as a "change **in any one** of the components of the [IEP] of a student as described in N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(2). N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1[g][9](emphasis added). If masks constitute a "change in placement," the City Defendants have conceded that they have changed the placement for every disabled Student in the City of New York with an IEP. The IDEA covers a wide range of disabilities. Many Students with IEPs have an array of medical ailments coupled with their qualifying disabilities.

Arguably, the mask mandates and, more specifically, the NYC Defendants' mask mandate constitutes a system-wide failure by the NYC DOE (the Local Education Agency (LEA)) to offer students with a qualifying disability under the IDEA a FAPE. Thus, Plaintiffs have standing in this Court to adjudicate same.

---

[5] Plaintiffs respectfully submit that the Ninth Circuit's holding has been misconstrued in opinions citing thereto. The Circuit Court held that system-wide changes in public schools that "<u>affect</u>" disabled and non-disabled children alike, are not changes in educational placement – the Court did not hold that changes that "<u>apply</u>" to disabled and non-disabled children alike are not changes in educational placement. Some opinions citing to *N.D.* misquote the Ninth Circuit substituting "<u>apply</u>" for "<u>affect</u>", which substantially changes the Ninth Circuit's holding. "<u>Affect</u>" means "to have an effect on", whereas "apply" means to have relevance or a valid connection. Using the proper word, it is clear that Ninth Circuit intended the distinction. In *N.D.*, the decision to shut down schools on Fridays equally *affected* disabled and non-disabled students – each group of students (1) did not attend school on Fridays; and (2) attended school for the same number of school days during the school year. In the case at bar, it would simply be frivolous and insincere to argue that mandatory mask wearing *affects* students with disabilities the same way that it *affects* students without disabilities.

16

If an IHO has the authority to adjudicate a request for an accommodation or medical exemption to the mask mandates, as the City Defendants suggest, the mask must be a qualifying "medical device," – if a mask is not a qualifying "medical device," it would not be the proper subject of an administrative hearing for an IHO to adjudicate.

It would be somewhat disingenuous for the City Defendants to contend that an IHO has the authority to adjudicate a request for an accommodation or medical exemption to the mask mandates, but that the mask itself is not a medical device – if the mask is not a "medical device," then what would it be? And where would an IHO derive their authority to adjudicate a request for an accommodation or medical exemption to the mask mandates?

The requirement to wear a mask is rooted in preventing disease and its transmission and otherwise mitigating related ***medical*** problems, issues, and/or complications – it is thus a "medical device". As a medical device, the mask was not made part of the Student/Plaintiffs' IEPs. Indeed, no consideration was given to how the addition of this medical device would adversely affect the Plaintiffs. Nor were the IDEA's procedural due process requirements, or procedural safeguards followed when the Defendants implemented their school mask mandates.

Once again, since the City, and State, Defendants have masked ***all*** students without exception or accommodation, in both public and private schools, the result is a systematic failure on behalf of the NYC DOE as it required students with IEPs, and thus disabilities, to wear a medical device during the school day without reconvening an IEP meeting or adhering to the IDEA's relevant due process requirements – constituting a change in educational placement for all students with an IEP in violation of the IDEA and resulting in the denial of a FAPE.

Under the final analysis set forth above, an IHO would be asked to determine whether mandatory mask-wearing is a "restraint" as set forth by the United States Department of

Education's Office of Civil Rights ("USDOE OCR"). If so, each Defendants' mask mandate constitutes a systematic failure under the the the IDEA.

"In general, OCR uses the following definitions for mechanical restraint and physical restraint.[6] Mechanical restraint refers to using any device or equipment to restrict a student's freedom of movement. The term does not include devices implemented by trained school personnel or utilized by a student that have been prescribed by an appropriate medical or related services professional, which are used for the specific and approved purposes that such devices were designed for, such as:

- Adaptive devices or mechanical supports used to achieve proper body position, balance, or alignment to allow greater freedom of mobility than would be possible without the use of such devices or mechanical supports;
- Vehicle safety restraints when used as intended during the transport of a student in a moving vehicle;
- Restraints for medical immobilization; or
- Orthopedically prescribed devices that permit a student to participate in activities without risk of harm.

Physical restraint refers to a personal restriction that immobilizes or reduces the ability of a student to move his or her torso, arms, legs, or head freely. The term physical restraint does not include a physical escort."[7]

Defendants contend that the preceding language is simply "too broad" and "too vague" to implicate wearing a mask as a restraint. However, well-settled legal precedents and case law hold that if the drafting/legislative body had intended for something to be more specific, it would have been expressly enumerated or appear textually on its face. As the Supreme Court noted in *Watt v. Alaska*:

---

[6] See, e.g., OCR, 2015-16 CRDC School Form, www.ed.gov/ocr/docs/crdc-2015-16-all-schools-form.pdf.
[7] https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201612-504-restraint-seclusion-ps.pdf

> "of course it is true that the words used, even in their literal sense, are the primary, and ordinary most reliable, source of interpreting the meaning of any writing: be it a statute, a contract or anything else, But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

*Watt v. Alaska*, 451 U.S. 259, 101 S. Ct. 1673, 68 L. Ed. 2d 80 (1981).

If an IHO were to find that mandatory mask-wearing constitutes a "restraint," the result would be the same across the board – the State and City Defendants would have committed a systematic violation of the IDEA by enforcing a State-wide mask mandate in schools for both disabled and non-disabled without exemption or accommodation. The use of restraints outside the express terms of the Student's IEP constitutes a change in educational placement for each Student with an IEP.

Once again, following the City Defendants' arguments to their logical conclusion establishes the Plaintiffs' standing and injury, especially those students with disabilities. By violating the clear terms of the IDEA and by failing to offer accommodations in accordance with Section 504 and the ADA, Plaintiffs have suffered an injury-in-fact.

By arguing that "masking" is an issue to be addressed at the administrative level, Defendants clearly understand that the mask is a "medical device" or other device such as a restraint that affects, impacts, and otherwise changes the educational placement of those students with IEPs – disabled students. As a result of the change in educational placement that students with IEPs would experience due to such mask mandates, the IDEA's stay-put provision would be triggered on the tenth cumulative day of the mask mandate in any school year. *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010).

The IDEA's stay-put or Pendency provision would require those Students with IEPs to remain in their status-quo educational placement, which would be their educational program **_without_** a mask, until the School District convenes an IEP meeting with the Students' Parents to add the mask to the Student's IEP. As established by statute and case law relative to the IDEA's stay-put provision, "[i]n a suit seeking to enforce compliance with the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(j), exhaustion is not required because of the time-sensitive nature of the right § 1415 (j) was designed to protect, *i.e.,* the right to remain in the current educational placement."

Defendants would rather engage in literary gymnastics than address the substance of Plaintiffs' claims – Plaintiffs' challenge to the current mask mandates imposed by the State and City Defendants. Not the efficacy of masking in the first instance, but the one size fits all mask mandates that the State and City Defendants have imposed upon all school-aged children, public and private (whether enforced or not, but subject to enforcement). Even under the most liberal standard of review – these mask mandates are not rationally related to a legitimate state interest. One can undoubtedly "rationalize" that the one-sized fits all mask mandates at issue herein are related to an "articulate" legitimate state interest, such as stopping the spread of COVID. Yet consider S.J.D., a student who uses a wheelchair, attending a private school, who is fully vaccinated from the Corona Virus – is there a rational basis to make her, and students like her, where a mask where the risk of adverse medical and other effects far outweigh any benefit a face covering, of any type, may yield?

Initially, at oral argument, the City Defendants argued that they were not actually imposing an NYC mask mandate upon the Students in the NYC public schools but were "following orders" and implementing the State's mask mandate – and thus, should be absolved from liability. Yet, in

their moving papers, the City Defendants seem to change their position by acknowledging the mask mandates' intersectionality with the IDEA, as it applies to those students with an IEP, and unsuccessfully attempt to argue a position that ultimately seems to support the Plaintiffs' arguments and position regarding the mask mandates' violation of, *inter alia*, the IDEA, Section 504 of the Rehab Act and the ADA, as well as the Fourteenth Amendments Due Process Clause. Defendants do not offer, suggest or identify any process, policy, or mechanism by which a Parent or Student can apply for, request, and/or obtain an accommodation or medical exemption to the mask mandates – other than the IDEA's administrative process, which as cited above, would not be appropriate given the pervasiveness and egregiousness of the violation.

## **<u>CONCLUSION</u>**

The other arguments and cases presented in support of the Defendants' motion are unavailing. Defendant cites cases that **<u>allowed</u>** or provided for accommodations and exemptions, unlike the case at bar. Defendants' attempt to use *Jacobsen* as a controlling case, was a case in which Mr. Jacobsen presented himself before the Court with voluminous data and studies supporting his assertion that the vaccine was harmful and should not be mandated. *Jacobsen* is inapposite to the case at bar. Plaintiffs assert that the broad sweeping language of the mandate, without accommodations or exceptions, is arbitrary and capricious and runs afoul of federal law and the Constitution. Although Plaintiffs have provided studies to support and convey recent arguments and statistics regarding masking, Defendants misinterpret the same as Plaintiffs' attempt to persuade the Court that there is a question as to whether "science" supports mask-wearing. On the contrary, Plaintiffs have provided this data to show the recent trends and analyses of the virus and masking worldwide, as opposed to State Defendants, who base their emergent "need" for a

mask mandate on two to three studies from 2020, conducted at the beginning and middle phases of the pandemic. *See* Letter to Court [Docket No.71 (dated November 18, 2021)].

For the reasons set forth herein, the New York City Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) should be denied in its entirety as the Plaintiffs have to stand to challenge the State and City Defendants' mask mandates and have pleaded factual content in their Complaint that allows this Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged therein.

Dated: December 13, 2021
          New York, New York

                              Brain Injury Rights Group, Ltd.
                              *Attorneys for Plaintiffs*

                              _____/S/_____
                    By:   Patrick B. Donohue, Esq.
                              300 East 95th Street, Suite 130
                              New York, NY 10128
                              (646) 850-5035