UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICK DONOHUE, *et al.*,

Plaintiffs,

-v-

KATHLEEN HOCHUL, *et al.*,

Defendants.

21-CV-8463 (JPO)

AMENDED OPINION
AND ORDER

---

J. PAUL OETKEN, District Judge:

The State of New York now generally requires schoolchildren to wear a mask, and the

City of New York has generally enforced that requirement. Plaintiffs Patrick Donohue, Angela

Nolan, and Marie Farrell are the parents of disabled schoolchildren in the City of New York —

S.J.D., S.N., and E.F., respectively. Plaintiffs seek a declaration that the school mask mandate is

unlawful, and they seek an injunction preventing various state and city officials and entities from

implementing the requirement, in part for reasons related to the children's disabilities, and in part

for other reasons. Plaintiffs have moved for a preliminary injunction.

The City Defendants — nominally Mayor Bill de Blasio, Chancellor Meisha Porter,

Commissioner Dave Chokshi, the New York City Department of Education, and the New York

City Department of Health — have moved to dismiss the complaint. Both the City Defendants

and the State Defendants — Governor Kathleen Hochul, Commissioner Howard Zucker,

Commissioner Betty Rosa, Chancellor Lester Young, Jr., the New York Department of Health,

the New York Department of Education, and the New York Board of Regents — oppose a

preliminary injunction. For the reasons that follow, the complaint is dismissed and the motion

for a preliminary injunction is denied.

## I.    Background

### A.    Statutory Context and Factual Background

Section 201 of New York's Public Health Law provides that the New York Department of Health "shall supervise and regulate the sanitary aspects of . . . activities affecting public health," N.Y. Pub. Health Law § 201(1)(m), and Section 206 provides that the Commissioner of that Department "shall . . . take cognizance of the interests of health and life of the people of the state, and of all matters pertaining thereto," *id.* § 206(1)(a).  To those ends, Section 225(a) provides that the sanitary code may "deal with any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York."  *Id.* § 225(a).

On August 27, 2021, to address "the emergence of the Delta variant" of COVID-19, the Public Health and Planning Council of the New York Department of Health issued Section 2.60 of Title 10 (Health) of the Official Compilation of Codes, Rules and Regulations of the State of New York.  (*See* Dkt. No. 61-1, at 2-16.)  Section 2.60(a) provides that "any person who is over age two and able to medically tolerate a face-covering may be required to cover their nose and mouth with a mask or face-covering when . . . in certain settings as determined by the Commissioner, which may include schools." 10 N.Y.C.R.R. § 260(a).  Section 2.60(e) states that "face-coverings shall include, but are not limited to cloth masks, surgical masks, and N-95 respirators that are worn to completely cover a person's nose and mouth."  *Id.* § 260(e).

On the same day, the Commissioner of the New York Department of Health issued a determination pursuant to that authority relating to indoor masking.  (*See* Dkt. No. 64-1, at 1-3.) The determination adopted recommendations of the Centers for Disease Control and Prevention ("CDC") for "face/coverings in school settings" and "impos[ed] them as requirements."  As described by the Commissioner, those recommendations required "the universal masking of teachers, staff, students, and visitors to [preschool]-12 schools over age two . . . regardless of

vaccination status," but covered only those who were "able to medically tolerate a face covering/mask," and remained "subject to applicable CDC-recommended exceptions." (Dkt. No. 64-1, at 2.) The CDC's recommendations, hyperlinked in the determination, provide that "[e]xceptions can be made" for "[a] person who cannot wear a mask, or cannot safely wear a mask, because of a disability as defined by the Americans with Disabilities Act." (Dkt. No. 64-4, at 1.)

The Public Health and Planning Council of the New York Department of Health voted to renew Section 2.60 on November 18, 2021. (*See* Dkt. No. 78.) To "curb the spread of the Omicron variant," the acting Commissioner renewed its determination on January 31, 2022. (*See* Mary T. Bassett, *Commissioner's Determination on Indoor Masking Pursuant to 10 NYCRR 2.60* (Jan. 31, 2022), at 1-4.) The Commissioner also extended the mandate "to any gathering on school grounds which addresses or implements educational matters where students are or may reasonably be expected to be present." (*Id.* at 2.) The New York City Department of Education has implemented the mask mandate since the school year began. (*See* Dkt. No. 64 ¶ 4.)

Plaintiffs are three parents of schoolchildren who attend school in New York City. Plaintiff Patrick Donohue is the parent and guardian of S.J.D., a 16-year-old student with a traumatic brain injury. (*See* Compl. ¶¶ 6, 10.) S.J.D. attends a private school called the International Institute for the Brain ("iBRAIN"). (*See* Compl. ¶¶ 11-12.) She is fully vaccinated, and she has not worn a mask "at any time during her educational program at iBRAIN." (Compl. ¶ 13.) The complaint alleges that "[w]earing a mask would significantly interfere with S.J.D.'s breathing," and "[w]earing a mask would significantly interfere with her ability to participate in her educational and related service program throughout the school day."

(Compl. ¶¶ 14-15.)  Her individual education plan ("IEP") does not include a requirement that she wear a mask.  (Compl. ¶ 17.)

Plaintiff Marie Farrell is the parent and guardian of E.F., a 16-year-old student with autism.  (*See* Compl. ¶¶ 19, 22.)  E.F. attends a public school in Staten Island.  (*See* Compl. ¶ 23.)  She is not vaccinated, and the parties agree that E.F. wears a mask to school.  (*See* Compl. ¶ 22; Dkt. No. 63.)  The complaint alleges that "E.F. currently has difficulty communicating," and that "[d]onning a mask would further inhibit her speech progress and cause further dysregulation, triggering maladaptive behaviors such as elopement, bouncing, screaming, etc." (Compl. ¶ 24.)  Her individual education plan does not include a requirement to wear a mask. (*See* Compl. ¶ 27.)

Plaintiff Angela Nolan is the parent and guardian of S.N., a 12-year-old student with a learning disability.  (*See* Compl. ¶¶ 29, 32.)  S.N. attends a public school in Staten Island, and he is fully vaccinated.  (*See* Compl. ¶¶ 32-33.)  The parties agree that he wears a mask to school. (*See* Dkt. No. 63.)  The complaint alleges that "S.N. struggles with forming intelligible speech" (Compl. ¶ 34), and that "[w]earing a mask would significantly interfere with his ability to participate in [his] educational and related service program throughout the school day, especially when attempting to 'model' teachers or related service providers to reach his goal of [communicating] 'low jaw' sounds" (Compl. ¶ 35).  As alleged, his individual education plan does not include a requirement to wear a mask.  (Compl. ¶ 36.)  Plaintiffs allege that they each sent notices to their respective local education agencies alleging that the mask mandate had improperly modified the students' individual education plans.  (*See* Compl. ¶¶ 432-433.)

### B.    Procedural History

Plaintiffs filed this class action complaint on October 14, 2021.  The 187-page complaint generally asserts three sets of claims.  The first set asserts that the mask mandate violates the

rights of disabled students under various federal statutes.  Plaintiffs contend that the mandate

violates the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the

Rehabilitation Act because it contravenes the terms of Plaintiffs' individual education plans.

(*See* Compl. ¶¶ 454-458).  Plaintiffs further contend that Defendants violated Section 1415(j) of

the Individuals with Disabilities Education Act when they enforced the mask mandate during

Plaintiffs' administrative proceedings.  (*See* Compl. ¶¶ 452-455).  Plaintiffs contend that the

mandate violates Title II of the Americans with Disabilities Act ("ADA") on the ground that a

mask is an impermissible "restraint."  (*See* Compl. ¶¶ 459-460).  And Plaintiffs contend that the

mandate exceeds the terms of any authorization from the Food and Drug Administration.  (*See*

Compl. ¶¶ 385-395).

A second set of claims asserts that the mask mandate violates various federal

constitutional rights.  Among other things, Plaintiffs contend that the mask mandate violates the

First Amendment's Establishment Clause (*see* Compl. ¶¶ 395-402), the Fourth Amendment's

prohibition on unreasonable searches and seizures (*see* Compl. ¶¶ 467-483), the Eighth

Amendment's prohibition against cruel and unusual punishment (*see* Compl. ¶¶ 403-509), the

Fourteenth Amendment's Due Process Clause (*see* Compl. ¶¶ 419-429, 434-440), and the

Fourteenth Amendment's Equal Protection Clause (*see* Compl. ¶¶ 430-433).  Plaintiff further

asserts rights to family integrity, privacy, personal autonomy, and bodily integrity.  (*See* Compl.

¶¶ 410-418).  In parallel, Plaintiffs assert claims under 42 U.S.C. § 1983.  (*See* Compl. ¶¶ 448-

451, 462-466).

A third set of claims asserts causes of action under state law, including allegations that

the mask mandate exceeds statutory authority under state law.  (*See* Compl. ¶¶ 81-130, 425,

428).  Plaintiffs also contend that the mandate violates New York's State Education Law § 313,

which prohibits discrimination in school admissions (*see* Compl. ¶¶ 441-443), and Title XI of the

New York State Constitution, which obligates New York to maintain public schools (*see* Compl.

¶¶ 444-447).

The City Defendants have moved to dismiss the complaint in part under Federal Rule of

Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and, alternatively, in its entirety

under Rule 12(b)(6) for failure to state a claim.  (*See* Dkt. No. 84).  Plaintiffs have also moved

for a preliminary injunction to enjoin the Defendants from further implementing a mask mandate

for students enrolled in elementary and secondary schools in New York.  (*See* Dkt. No. 2).

## II.    Legal Standards

Federal Rule of Civil Procedure 12(b)(1) directs a court to dismiss a complaint for "lack

of subject-matter jurisdiction."  To survive a motion to dismiss for lack of subject-matter

jurisdiction, a plaintiff must identify "the statutory or constitutional power to adjudicate" the

action.  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir.

2015).

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint for

"failure to state a claim upon which relief can be granted."  To survive a motion to dismiss for

failure to state a claim, a complaint must state "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  This means that a complaint is properly dismissed where "the allegations in a

complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at

558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Federal Rule of Civil Procedure 65 authorizes a court to issue a preliminary injunction. Such injunctions are "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) (*quoting Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020)).

## III.   Discussion

The Court begins with the issue of standing under Article III to the Constitution, then turning to the merits of Plaintiffs' federal statutory claims, federal constitutional claims, and state law claims.

### A.   Standing

The City Defendants first contend that the Court lacks subject-matter jurisdiction over the action on the ground that Plaintiff Patrick Donohue lacks standing under Article III to assert claims either on his own behalf or on behalf of his daughter, S.J.D. (*See* Dkt. No. 86 ("City Defs.' Memo") at 12.). It is true that Article III limits subject-matter jurisdiction, *see Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020), and plaintiffs must "demonstrate standing for each claim and form of relief sought," *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). But where, as here, "multiple parties seek the same relief, a court ordinarily has jurisdiction so long as one of the plaintiffs has standing." *Adrianza v. Trump*, 505 F. Supp. 3d 164, 172-73 (E.D.N.Y. 2020) (citing *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)).

The City Defendants do not move to dismiss Plaintiffs Angela Nolan and Marie Farrell for lack of standing to bring claims on behalf of their children, S.N., and E.F., respectively, and it

is clear that at least Marie Farrell has standing sufficient to satisfy Article III at this early stage.

To satisfy Article III, a plaintiff must show "(i) that he suffered an injury in fact that is concrete

particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant;

and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v.

Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61

(1992)). Plaintiffs here stand in for their schoolchildren. The parties agree that Marie Farrell's

daughter, E.F., wears a mask to school, and the complaint alleges that E.F. "currently has

difficulty communicating" and that wearing a mask "would further inhibit her speech progress

. . . , triggering maladaptive behaviors, such as elopement, bouncing, screaming, etc." (Compl.

¶ 24.) Further, the City Defendants have submitted a letter from E.F.'s pediatrician notifying her

school that "it can be difficult for [E.F.] to wear a mask consis[tently] and for long periods of

time." (Dkt. No. 63-1.) These materials adequately show that E.F. has an injury that would be

alleviated by an injunction.

### B.     Federal Statutory Claims

Plaintiffs seek to bring claims under the IDEA, the ADA, and the Federal Food, Drug,

and Cosmetic Act.

#### 1.     IDEA IEP Claims

The IDEA obligates States to "develop appropriate plans to . . . provide a free and

appropriate public education ('FAPE') to children with disabilities." *Ventura de Paulino v. New

York City Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (citing 20 U.S.C. § 1412(a)(1)). To

that end, a school district must develop an individual education plan ("IEP") for each disabled

student. *See id.* An IEP, which "sets out the child's present educational performance,

establishes annual and short-term objectives for improvements in that performance, and

describes the specially designed instructions and services that will enable the child to meet those

objectives," is "the centerpiece of the statute's education delivery system for disabled children,"
*Honig v. Doe*, 484 U.S. 305, 311 (1988).  It must be "reasonably calculated to enable the child to
receive educational benefits," *Ventura de Paulino*, 959 F.3d at 525, and it must "be implemented
as soon as possible," *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 514 (2d Cir.
2006).  Plaintiffs allege that Defendants denied their schoolchildren a free and appropriate
education because Defendants subjected them to "mandatory masking, contrary to the terms of
their IEPs."  (Compl. ¶ 454.)

The City and State Defendants both argue that Plaintiffs have not exhausted this claim.
(*See* City Defs.' Memo at 12-13; Dkt. No. 67 ("City Defs.' Opp'n") at 20-21; Dkt. No. 62 ("State
Defs.' Opp'n") at 19-20).  To be sure, under the IDEA, States must "develop an administrative
review process for parents who are dissatisfied with their child's education" or their plan,
*Ventura de Paulino*, 959 F.3d at 525-26, which must enable a party to present a complaint "with
respect to any matter relating to the identification, evaluation, or educational placement of the
child, or the provision of a free appropriate public education to such child," 20 U.S.C.
§ 1415(b)(6).  And the IDEA "requires that any available administrative remedies be exhausted
before a lawsuit is filed in federal court."  *Ventura de Paulino*, 959 F.3d at 530 (citing 20 U.S.C.
§ 1415(i)(2)(A)).  But the complaint alleges that the Plaintiffs "filed due process complaints with
their [local education agencies] alleging violations of the IDEA" because Defendants
"unilaterally modif[ied] the Plaintiff-Students' IEPs," *see* Compl. ¶¶ 432-433, which the Court
accepts at this early stage.  And in any event, a plaintiff may "bypass the administrative process
where exhaustion would be futile or inadequate," *Honig*, 484 U.S. at 327, which is the case
where a plaintiff alleges that "a school has failed to implement services that were specified or
otherwise clearly stated in an IEP," *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,

288 F.3d 478, 489 (2d Cir. 2002); *see Levine v. Greece Cent. Sch. Dist.*, 353 F. App'x 461, 465 (2d Cir. 2009) (summary order); *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 139 (E.D.N.Y. 2010).

Plaintiffs, however, have not stated a claim that Defendants failed to implement any IEP. The complaint does not identify any provision in any of the students' IEPs that specifies that the students will not wear a mask, and the alleged IEPs, attached to the complaint, do not appear to contain any such provision.  (*See* Dkt. No. 16-1 ("S.J.D. IEP"); Dkt. No. 16-2 ("E.F. IEP"); Dkt. No. 16-3 ("S.N. IEP")).  Absent such allegations, a failure-to-implement claim is not plausible. Moreover, a party "challenging the implementation of an IEP must show more than a de minimis failure to implement all elements of that IEP"; it "must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP."  *D.D.S. v. Southold Union Free Sch. Dist.*, No. 09-CV-5026, 2011 WL 3919040, at *13 (E.D.N.Y. Sept. 2, 2011) (quoting *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000)); *see A.P. v. Woodstock Bd. of Educ.*, 370 F. App'x 202, 205 (2d Cir. 2010) (summary order); *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16-CV-3138, 2019 WL 6907533, at *13 (S.D.N.Y. Dec. 19, 2019); *J.L. on behalf of J.P. v. New York City Dep't of Educ.*, 324 F. Supp. 3d 455, 467 (S.D.N.Y. 2018); *V.M. v. N. Colonie Cent. Sch. Dist.*, 954 F. Supp. 2d 102, 118 (N.D.N.Y. 2013); *R.C. ex rel. M.C. v. Byram Hills Sch. Dist.*, 906 F. Supp. 2d 256, 271 (S.D.N.Y. 2012); *T.L. ex rel. B.L. v. Dep't of Educ. of City of New York*, No. 10-CV-3125, 2012 WL 1107652, at *14 (E.D.N.Y. Mar. 30, 2012).  Adding a mask-wearing requirement does not reflect a significant breach.  *Cf. R.C. ex rel. M.C.*, 906 F. Supp. 2d at 271 (finding failure de minimis where school district committed to providing a resource room but could only provide one "five out of six days of the week").  A contrary rule "would effectively strip state governments of the

10

ability to adopt statewide policy." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 214 (2d Cir. 2012). Accordingly, allegations that Defendants failed to provide students with a free and appropriate education under the IDEA do not state a claim. For the same reasons, derivative allegations that Defendants violated Section 504 of the Rehabilitation Act also do not state a claim.

### 2.   IDEA Pendency Claims

Plaintiffs also sue under 20 U.S.C. § 1415(j), the IDEA's "stay-put" provision. *See Ventura de Paulino*, 959 F.3d at 526. With exceptions not relevant here, it provides that "during the pendency of any proceedings conducted pursuant to [the IDEA], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." Plaintiffs allege that they initiated proceedings, and the mask mandate altered the terms of their children's plans during those proceedings. (*See* Compl. ¶ 433.)

The City Defendants move to dismiss these claims primarily on the ground that they could find no evidence that Plaintiffs initiated proceedings specifically challenging the mask mandate. (*See* City Defs.' Memo at 8, 12-13; Dkt. No. 85 ("Morgenstern Decl.") ¶¶ 4-6.) It is true that a plaintiff must initiate "proceedings conducted pursuant to [the IDEA]" to trigger the stay-put provision. 20 U.S.C. § 1415(j). But again, the complaint alleges that the Plaintiffs have done so, which the Court accepts as true at the present stage, and in any event, although the City Defendants have not been able to identify a proceeding relating to the mask mandate, they have identified other pending proceedings. With those proceedings pending, Plaintiffs were not required to separately exhaust their claim that the mask mandate violated Section 1415(j) by altering the status quo for their children. "[W]here 'an action alleg[es a] violation of the stay-put

provision,' such action 'falls within one, if not more of the enumerated exceptions' to the IDEA's exhaustion requirement." *Id.* (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)).

Nonetheless, Plaintiffs have failed to state a claim under Section 1415(j) because they have not alleged any change to the "educational placement" of their children during their proceedings. A court typically starts with "the placement described in the child's most recently implemented IEP" to determine a child's "educational placement" when they initiated proceedings. *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). Again, the IEPs here, attached to the complaint, do not address masks, and they do not direct the district not to impose a mask mandate. Because the mandate "did not necessitate any alterations to plaintiffs' children's IEPs," the mandate does not reflect a change. *V.D. v. State*, 403 F. Supp. 3d 76, 93 (E.D.N.Y. 2019).

Further, although an IEP often sheds light on a child's "educational placement," the term "refers only to the general type of educational program in which the child is placed," *Concerned Parents & Citizens for the Continuing Ed. at Malcolm X (PS 79) v. New York City Bd. of Ed.*, 629 F.2d 751, 753 (2d Cir. 1980), meaning the "general level and type of services" for the disabled child, *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014), such as "the classes, individualized attention, and additional services a child will receive," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009). Plaintiffs do not allege that the mask mandate changed any student's educational program, classes, attention, or services. Therefore, they have not alleged any change in "educational placement." *Cf. J.T. v. de Blasio*, 500 F. Supp. 3d 137, 189 (S.D.N.Y. 2020) (finding no change despite switch to remote learning where disabled students would "remain in the same classification, in the same school district, and likely

have the same teachers").  Indeed, it is well settled that the term "educational placement" does

not refer "to all the various adjustments in [an education] program that the educational agency, in

the traditional exercise of its discretion, may determine to be necessary."  *Concerned Parents &*

*Citizens for the Continuing Ed. at Malcolm X (PS 79)*, 629 F.2d at 756.  A mask mandates falls

well within that discretion.  *Cf. V.D.*, 403 F. Supp. 3d at 93 (concluding that vaccine mandate did

not reflect a change in educational placement even as a "condition for school attendance").

Accordingly, allegations that the mask mandate violated Section 1415(j) do not state a claim.

### 3.   ADA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs or activities of a public entity, or be subjected to discrimination by any such

entity." 42 U.S.C. § 12132.  Plaintiffs allege that the mask mandate violates the ADA because it

"implement[s] a mandatory 'restraint.'"  (Compl. ¶ 460.)  Plaintiffs have not identified any

authority for the proposition that the ADA bars mandatory restraints, nor is that proposition

reasonable, as the ADA does not bar restraints; it bars exclusion and discrimination.  *See* 42

U.S.C. § 12132.  Moreover, a mask mandate does not impose a "restraint."  Plaintiffs emphasize

that masks restrict "the movement of students' mouths, lips, and airways" (Compl. ¶ 443), but

they do so only to the same extent that a school uniform restricts other movement, *see V.D. v.*

*State*, 403 F. Supp. 3d at 88.  In general, "school boards have broad discretion in the

management of school affairs," *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,

457 U.S. 853 (1982), and that includes the discretion to restrict the movement of students by

setting policies for arrival, attendance, suspension, removal, or daily wear.  Plaintiffs' ADA

claims must be dismissed as well.

### 4.     Emergency Use Authorization Claim

Plaintiffs also purport to assert a claim by alleging that the mask mandate exceeds the terms of the Food and Drug Administration's emergency use authorization ("EUA") for masks. Section 360bbb-3 of the Federal Food, Drug, and Cosmetic Act ("FDCA") sets out the statutory framework for emergency authorization of products by the FDA. *See* 21 U.S.C. 360bbb-3. But the FDCA has no "private right of action" to "enforce alleged violations." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (citing 21 U.S.C. § 337(a)). Accordingly, there is no private right of action to enforce alleged violations of the emergency use authorization itself, as the private right of action to enforce an agency requirement "can extend no further than the personal right conferred by the plain language of the statute," *Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011). Lacking a right of action under the statute, Plaintiffs cannot leverage the emergency use authorization to invalidate the mask mandate here.

### C.     Federal Constitutional Claims

#### 1.     First Amendment Claims

The Establishment Clause generally directs that "one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). "Although 'much criticized,' the *Lemon* test still governs cases alleging violations of the Establishment Clause." *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 395 (2d Cir. 2015). Under *Lemon*, for "government action to satisfy the neutrality principle of the Establishment Clause, it must (1) 'have a secular purpose,' (2) have a 'principal or primary effect that neither advances nor inhibits religion,' and (3) 'not foster an excessive government entanglement with religion.'" *Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*, 760 F.3d 227, 238 (quoting *Lemon v. Kurzman*, 403 U.S. 602, 612-13 (1971)). The

allegations here primarily concern whether the mask mandate advances religious beliefs. *See* Compl. ¶¶ 145-158, 395-402.

Plaintiffs assert that the mask mandate violates the Establishment Clause in two ways. First, Plaintiffs allege that "[t]o enforce the [state-wide mask] mandate," Governor Kathleen Hochul "has taken to Churches and other houses of worship throughout the state, where . . . she enlists the help and assistance of the congregations' members . . . to impose and enforce her mandates on those who have not yet complied." (Compl. ¶¶ 145, 149.) The statements made at these events were about vaccination, not masking, so they do not raise an inference about the mask mandate. (*See id.*) And in any event, the Second Circuit has already concluded that those statements simply reflected "that the State wanted more people to obtain the vaccine out of a deep concern for public health, which is a religion-neutral government interest." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 283 (2d Cir. 2021). Likewise, the Second Circuit has held that Governor Hochul's "expression of her own religious belief as a moral imperative to become vaccinated" in those statements "cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers." *Id.*

Second, Plaintiffs allege that the mask mandate advances humanism. (*See* Compl. ¶¶ 218-256.) But the complaint does not raise a plausible inference that the mandate embraced such beliefs. Plaintiffs recite several statements made by Dr. Anthony Fauci, but none of the statements concern humanism, and in any event, the complaint contains no allegations that Dr. Fauci had any "meaningful role in establishing or implementing" New York's mask mandate. *See Kane v. De Blasio*, 19 F.4th 152, 165 (2d Cir. 2021). The other allegations associating the mask mandate with humanism are conclusory. *See Iqbal*, 556 U.S. at 679. Accordingly,

Plaintiffs have failed to state a claim that the mask mandate violated the First Amendment's Establishment Clause.

Plaintiffs' other asserted First Amendment claims fail as well.  Plaintiffs assert that the mask mandate is impermissibly vague because it does not specify "what type of mask(s) should be worn" (Compl. at 5), but Section 2.60(e) of the mandate provides that "face-coverings shall include, but are not limited to cloth masks, surgical masks, and N-95 respirators that are worn to completely cover a person's nose and mouth," which is enough "to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," *Melendez v. City of New York*, 16 F.4th 992, 1015 (2d Cir. 2021) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).  Plaintiffs assert that Defendants made "false speech" and "incit[ed]" a breach of the peace (Compl. ¶ 396), but "false statements" and "incitement" are oft-discussed categories of unprotected speech under the First Amendment, not predicates for First Amendment violations, *see United States v. Alvarez*, 567 U.S. 709, 718 (2012); *Brandenburg v. Ohio*, 395 U.S. 444 (1969).  Plaintiffs assert that the mask mandate interferes with Plaintiffs' right to freedom of association (Compl. ¶ 396), but the complaint lacks any facts suggesting that the mask mandate burdens a student's ability to "enter into and maintain certain intimate or private relationships" or their "freedom of individuals to associate for the purpose of engaging in protected speech or religious activity," *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987), and in any event, any interference here would be de minimis, not "substantial" or "significant," *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996); *see Oberheim v. Bason*, --- F. Supp. 3d ----, 2021 WL 4478333, at *9 (M.D. Pa. Sept. 30, 2021); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1080 (D. Haw. 2021).  Accordingly, all of Plaintiffs' First Amendment claims must be dismissed.

### 2.    Fourth Amendment Claims

The Fourth Amendment "prohibits unreasonable 'seizures' to safeguard '[t]he right of the people to be secure in their persons.'" *Torres v. Madrid*, 141 S. Ct. 989, 993 (2021). Plaintiffs assert that Defendants effected "unlawful seizures" by "encourag[ing] the illegal use of mask restraints." (Compl. ¶¶ 473-479.) But Plaintiffs have alleged only that Defendants effected a mandate that students wear masks, not that Defendants ever applied "physical force to the body of a person with intent to restrain," *Torres*, 141 S. Ct. at 994, made a "show of authority" that "in some way restrained the liberty" of a person, *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968), or otherwise made a "reasonable person" believe "that he was not free to leave," *United States v. Mendenhall*, 446 U.S. 554, 554 (1980). Accordingly, Plaintiffs have not alleged any facts raising an inference that Defendants ever made a seizure.

### 3.    Eighth Amendment Claims

Plaintiffs assert that the mask mandate violates the Eighth Amendment's proscription against "cruel and unusual punishment" (Compl. ¶¶ 403-409) but the Eighth Amendment "has no application" where, as here, "there ha[s] been no formal adjudication of guilt" like a conviction for a crime, *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (citing *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977)). Accordingly, Plaintiffs' Eighth Amendment claim must be dismissed.

### 4.    Procedural Due Process Claims

Plaintiffs assert claims under the Due Process Clause of the Fourteenth Amendment. Ordinarily, a plaintiff states a procedural due process claim "by plausibly alleging that '(1) state action (2) deprived him or her of liberty or property (3) without due process of law.'" *Bellin v. Zucker*, 6 F.4th 463, 474 (2d Cir. 2021). Plaintiffs assert that the mask mandate deprived students of the right to make an "intimate choice[] that define[s] personal identity and beliefs," as

well as the "right to education," and protest that Defendants "circumvent[ed] the Legislature" to issue the mask mandate.  (Compl. ¶ 428.)

That claim fails because "it is black letter law that a person is not entitled to procedural due process protections against government action that is legislative in nature."  *Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 714 (S.D.N.Y. 2021) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)).  A government action is legislative if it has "general application" and "applies prospectively."  *Id.* (citing *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 143 (2d Cir. 1994)).  The rules challenged here satisfy both requirements.  They generally require masking for teachers, staff, students, and visitors in schools, going forward.

Further, Plaintiffs have not alleged facts suggested any deprivation of a protected interest.  Plaintiffs have not alleged facts supporting a plausible inference that mask wearing infringes on a student's personal identity or beliefs.  And Plaintiffs have not adequately alleged that the mask mandate deprives students of their right to an education.  Students generally have a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause."  *Goss v. Lopez*, 419 U.S. 565, 574 (1975).  But there is "no property interest in any particular type of education program," *Bryant*, 692 F.3d at 218, just an interest in not being "excluded from the entire educational process," *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997).  Because the complaint lacks allegations that students were ever "suspended, expelled, or otherwise excluded . . . in any manner," *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-CV-4564, 2017 WL 3017189, at *9 (E.D.N.Y. July 11, 2017), Plaintiffs have not stated a claim that Defendants violated procedural due process.

### 5.    Substantive Due Process Claims

The Due Process Clause of the Fourteenth Amendment contains "a substantive component that protects against certain government actions regardless of the fairness of the procedures used to implement them." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (marks omitted).  The state may not engage in conduct that "shocks the conscience" or interferes with fundamental rights "implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987).  Plaintiffs invoke rights to family integrity, privacy, personal autonomy, and bodily integrity.  *See* Compl. ¶¶ 410-418.  They also invoke parental rights to direct education and upbringing.  *See id.* ¶¶ 434-440.

Plaintiffs fail to state a claim based on rights to family integrity or privacy.  The complaint does not raise an inference that the mask mandate undermines the family or reveals private information; Plaintiffs only reference these rights, and such allegations are waived for lack of development.  *See Blagrove v. Deutsche Bank Nat'l Tr. Co.*, No. 19-CV-5357, 2021 WL 1601115, at *2 n.* (E.D.N.Y. Apr. 23, 2021) (citing *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013)).

Plaintiffs also do not state a claim based on personal autonomy or bodily integrity.  The Second Circuit "and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional," including "medical freedom" and "bodily autonomy."  *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 38-39 (1905)).  The same logic makes a mask mandate, deployed for the same purpose, unproblematic for constitutional purposes.  Nor can it fairly be said that a mask mandate for schoolchildren shocks the conscience, given that New York introduced the requirement "in accordance with CDC

guidance," in an "attempt[] to safely reopen schools amid a pandemic that has hit New York City particularly hard," *Kane*, 19 F.4th at 166, or that the mandate interferes with an ingrained concept of ordered liberty, given that schools have long had dress codes, and states have long made "vaccination of children a condition of their right to enter or remain in public schools," *Jacobson*, 197 U.S. at 31-33.

Plaintiffs also fail to state a claim based on parental rights to direct education. The Supreme Court has "recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 66 (2000), but parents "have no constitutional right to provide their children with . . . education unfettered by reasonable government regulation." *Immediato*, 73 F.3d at 461 (citing *Runyon v. McCrary*, 427 U.S. 160, 178 (1976)). For the reasons already explained, the mask mandate was reasonable as a matter of law. *See Kane*, 19 F.4th at 166 (upholding vaccination requirement for teachers as reasonable); *Doe v. Franklin Square Union Free Sch. Dist.*, No. 21-CV-5012, 2021 WL 4957893, at *18-19 (E.D.N.Y. Oct. 26, 2021) (upholding school mask mandate as reasonable); *Oberheim*, 2021 WL 4478333, at *4 (upholding school mask mandate as reasonable). Accordingly, Plaintiffs' substantive due process claims must be dismissed as well.

### 6.   Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment "embodies a general rule that States must treat like cases alike, but may treat unlike cases accordingly." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quoting *Vacco v. Quill*, 521 U.S. 793, 799 (1997)). Plaintiffs do not allege that the mask mandate, by its terms, discriminates against a protected class. *See Bryant*, 692 F.3d at 219. Nor do Plaintiffs proceed based on a theory of "selective enforcement," *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019), or a "class of one" theory, *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000).

Instead, Plaintiffs allege that the mask mandate violates the Equal Protection Clause because disabled students may temporarily avoid the mandate by initiating administrative proceedings under the IDEA, thereby triggering the IDEA's stay-put provision, while other students lack such protections. (*See* Compl. ¶¶ 430-433.) That is not a cognizable claim. In any event, for the reasons already explained, a mask mandate does not reflect the kind of change in "educational placement" that might trigger the stay-put provision. *See* 20 U.S.C. § 1415(j). And to the extent that Plaintiffs argue that the mask mandate, in effect, discriminates on the basis of disability, such laws "are subject to rational-basis review and upheld so long as there is a 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Bryant*, 692 F.3d at 219 (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 109 (2d Cir. 2001)). Again, both the mask mandate and the stay-put provision pass that test. Accordingly, Plaintiffs' claims under the Equal Protection Clause must be dismissed as well.

### 7.   Other Federal Claims

Plaintiffs' remaining federal claims fare no better. Plaintiffs allege violations under the Ninth Amendment, but the Ninth Amendment "is not an independent source of individual rights." *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) (quoting *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007)). Where plaintiffs "fail plausibly to allege a violation of any other constitutional right," they cannot "recast their unsuccessful claims as a violation of the Ninth Amendment." *Id.* Likewise, Plaintiffs assert a separate claim under Section 1983, but Section 1983 "imposes liability only upon those who actually cause a deprivation of rights." *Blyden v. Mancusi*, 1986 F.3d 252, 264 (2d Cir. 1999). Because Plaintiffs have not identified any deprivation, they cannot take advantage of Section 1983. *See id.* Finally, Plaintiffs bring a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 664 (1978), but a

defendant can be held liable under *Monell* only if "its policy resulted in a violation of [a plaintiff]'s constitutional rights," *Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 363 (2d Cir. 2021). Plaintiffs' independent claims under these provisions must be dismissed as well.

### D.      State Statutory and State Constitutional Claims

Absent any federal claim, there is no justification for retaining jurisdiction over Plaintiffs' remaining state claims. *See Phillips*, 775 F.3d at 544 n.7. Plaintiffs allege that the mask mandate exceeds statutory authority under state law, *see* Compl. ¶¶ 81-130, 425, 428, violates New York's State Education Law § 313, *see* Compl. ¶¶ 441-443, and violates Title XI of the New York State Constitution, *see* Compl. ¶¶ 444-447. "[J]udicial economy, convenience, fairness, and comity" all bear on whether it is appropriate to exercise supplemental jurisdiction, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018), and these factors counsel against retaining jurisdiction because all federal claims have been "eliminated in the early stages of litigation," *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006), and Plaintiffs can bring their state claims in state court. Plaintiffs' state law claims are therefore dismissed without prejudice.

### E.      Preliminary Injunction

Because Plaintiffs have not stated any federal claim, and the Court does not retain jurisdiction over any state claim, there is also no basis for issuing a preliminary injunction. A preliminary injunction is proper only where a plaintiff shows "a likelihood of success on the merits," *Kane*, 19 F.4th at 163, so where a complaint must be dismissed, a preliminary injunction will not issue. *See Bryant*, 692 F.3d at 219 (citing *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 154 & n.3 (2d Cir. 2010)). Accordingly, Plaintiffs' motion for a preliminary injunction is denied.

**IV.    Conclusion**

For the foregoing reasons, the City Defendants' motion to dismiss the complaint is

granted, and the complaint is dismissed in its entirety.  Because the defects with the complaint

are substantive, and amendment would be futile, the federal claims are dismissed with prejudice.

*See Kim v. Kimm*, 884 F.3d 98, 105-06 (2d Cir. 2018).  The state law claims are dismissed

without prejudice to refiling in state court.  Plaintiffs' motion for a preliminary injunction is

denied.

The Clerk of Court is directed to close the motions at Docket Numbers 2 and 84 and to

close this case.

SO ORDERED.

Dated: March 7, 2022
         New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge